FILED

'13 OCT 21 AM 9: 55

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

0%

DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL P. KOBY, an individual; MICHAEL SIMMONS, an individual; and JONATHAN SUPLER, on behalf of themselves and all others similarly situated, | CASE NO. 09cv780-KSC |
| | **ORDER:** |
| | **(1) CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT; AND,** |
| Plaintiffs, | |
| vs. | **(2) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT** |
| ARS NATIONAL SERVICES, INC., a California corporation, et al., | |
| Defendants. | |

On February 12, 2013 plaintiffs Michael Koby, Michael Simmons, and Jonathan Supler ("plaintiffs" or "Class Representatives") and defendant ARS (collectively "the parties") filed their proposed nationwide Class Action Settlement Agreement ("Settlement") to resolve this putative class action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). [Doc. No. 81] On June 27, 2013, Bernadette M. Helmuth filed an Objection ("Helmuth Objection") to the proposed Settlement. For the reasons outlined in greater detail below, the Court certifies the class for settlement purposes and approves the Settlement as presented.

///

# I. BACKGROUND

## A.    Factual and Procedural Background

On April 15, 2009, plaintiffs filed this case as a putative class action alleging that defendant attempted to collect plaintiff's alleged debts in a manner that did not comport with the FDCPA, 15 U.S.C. §1692 *et seq.*, specifically §§ 1692d(6) and 1692e(11). [Doc. No. 1] The Complaint alleges that defendant left voice messages for consumers that failed to disclose the purpose or nature of the call and that the call was from a debt collector. [Doc. No. 1, p. 3]

On March 29, 2010, the Court entered an Order [Doc. No. 19] granting in part and denying in part defendant's Motion for Judgment on the Pleadings. Defendant's Motion was granted as to the claim that the message left with plaintiff Simmons violated section 1692e(11); however, all other claims survived. [Doc. No. 19, p. 10] On July 21, 2010, the parties jointly moved to certify for appeal the Court's March 29, 2010 Order on defendant's Motion for Judgment on the Pleadings. [Doc. No. 24] On December 23, 2010, the Court certified the March 29, 2010 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). [Doc. No. 42] On December 29, 2010, defendant filed a petition for permission to appeal. [Doc. No. 43] However, on March 28, 2011, the Ninth Circuit Court of Appeals denied defendant's petition for leave to appeal. [Doc. No. 44]

During the course of the litigation, and without any admission of liability, defendant ARS adopted a single, uniform, and consistent message for future consumer collection calls. This message was effectively implemented on August 19, 2011. [Doc. No. 81, ¶ 22] Plaintiffs do not take issue with the revised message, nor do they contend that it violates the requirements of §§ 1692d(b) or 1692e(11) of the FDCPA. *Id.*

Shortly thereafter, the parties entered into settlement discussions. On February 17, 2012, the parties held a full-day Settlement Conference with Magistrate Judge Jan Adler. [Doc. No. 62] While the case failed to settle on that date, several months of negotiations ensued, culminating in a January 30, 2013 full-day Mandatory Settlement

1  Conference with the undersigned Magistrate Judge. [Doc. No. 80] Following serious,
2  informed, arms-length negotiations, the parties reached a settlement, the contents of
3  which were placed on the record before Magistrate Judge Crawford that same day.

4  **B.    The Settlement**

5  Per the proposed Settlement Agreement, defendant has agreed to the entry of
6  a two-year injunction whereby it will utilize an approved script for all consumer
7  collection calls. [Doc. No. 81, ¶ 32] The agreed-upon script is the same one defendant
8  started using on August 9, 2011 (as referenced on page 2, lines 20-22) and is attached
9  as an exhibit to the proposed Settlement Agreement. [Doc. No. 81, p. 29, Exh. B] In
10  addition, defendant has agreed to pay, in the form of a *cy pres* award to a local
11  veteran's organization designed to promote financial literacy, the sum of $35,000.00,
12  which the parties agree is a fair approximation of the maximum class statutory damages
13  recoverable under § 1692k(a)(2)(B) of FDCPA.  [Doc. No. 81, ¶ 33] With respect to
14  the three individually named Class Representatives, defendant will pay to each the sum
15  of $1,000.00 (for a total of $3,000.00) in satisfaction of their individual claims.  [Doc.
16  No. 81, ¶ 37] Further, defendant will pay reasonable attorney's fees and costs to Class
17  Counsel in the amount of $67,500.00.  [Doc. No. 81, ¶ 38]

18  The parties agree to certify a Settlement Class, pursuant to Rule 23(b)(2) of the
19  Federal Rules of Civil Procedure, defined as all persons who received a telephonic
20  voicemail message  from defendant in connection with an attempt to collect a debt, in
21  which the message allegedly failed to identify defendant as the caller, state the purpose
22  or nature of the call, or disclose that the call was from a debt collector, during the
23  period April 15, 2008 (one year prior to the filing of the lawsuit) through August 19,
24  2011 (when defendant adopted a standardized uniform message for calls made to
25  consumers). [Doc. No. 81, ¶ 31] Defendant estimates (and plaintiffs do not dispute) that
26  the class size is in excess of four million persons. [Doc. No. 88, p. 7]  While the
27  proposed Settlement Agreement would bar the unnamed Class Members from asserting
28  a claim under state or federal law through a class action or mass action device, the

Agreement expressly reserves the right of individual Class Members to bring individual claims for damages. [Doc. No. 81, ¶ 43]

## C.    Preliminary Approval of the Settlement

On January 30, 2013, the Court preliminarily approved both the Settlement Class and Settlement terms pursuant to Federal Rule of Civil Procedure 23(e), and ordered the parties to provide notice of the Settlement to the Class Members in the manner discussed and approved at the Mandatory Settlement Conference. [Doc. No. 80] The parties discussed the essential Rule 23(e) elements at the Conference and put the pertinent terms of the Settlement on the record; however, a more in-depth analysis of the Court's approval of the Settlement Class and Settlement is provided below. Furthermore, while the Court granted preliminary approval at the conclusion of the January 30, 2013 Conference, the Court reserved final judgment on the fairness, adequacy, and reasonableness of all Settlement terms until after the final fairness hearing.

## D.    Notice to and Reaction of Class Members

In contrast to Rule 23(b)(3) classes (seeking monetary damages) which require actual notice to the class members, Rule 23(b)(2) classes (seeking declaratory or injunctive relief) do not require individualized notice. Rather, the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), defines the limited scope of notice that is required. At the conclusion of the January 30, 2013 Mandatory Settlement Conference, the Court ordered plaintiff to disseminate notice in this manner. In accordance with CAFA, on February 22, 2013, the settlement administrator, Epiq Systems, sent the appropriate CAFA notice regarding the proposed class action settlement to 57 federal, state, and territorial officials. [Doc. No. 82] Further, on March 7, 2013, Epiq mailed a single, supplemental CAFA notice. *Id.* The 90-day period for any official to respond or object lapsed without any response or objection being received. [Doc. No. 85, ¶ 2] However, on June 27, 2013, Bernadette Helmuth ("Helmuth") filed an Objection to the proposed Settlement. [Doc. No. 86]

- 4 -

### 1.    The Helmuth Objection

Helmuth is a plaintiff and potential class representative in a putative class action filed in federal court in Florida against defendant in which nearly identical FDCPA claims are asserted. *Helmuth v. ARS National Services*, 11cv81044-KAM (S.D. Fla. 2011). The Complaint in Helmuth's Florida action was filed on September 15, 2011, long after the Complaint in the instant action was filed on April 15, 2009. By definition, Helmuth is a Class Member in this action, and by the terms of the Settlement, would be barred from pursuing her case against defendant using class or mass action devices. The Court handling the Florida matter has stayed the action and has refrained from ruling on Helmuth's class certification motion, pending a determination by this Court on the proposed Settlement.[1]

Helmuth argues that the proposed Settlement is patently unfair because it affords no monetary relief to the unnamed Class Members, provides no individualized notice or mechanism to opt-out, and improperly certifies the Settlement Class as a Rule 23(b)(2) class, even though FDCPA does not provide for injunctive relief and the plaintiffs initially and primarily sought monetary relief. [Doc. No. 86, ¶¶ 2, 4] As alleged, the Class Members are bound by the terms of the Settlement Agreement and are losing the right to collectively pursue their claims through class or mass actions. Helmuth accuses the parties of selecting injunctive relief solely to facilitate settlement and to frustrate the traditional, individualized notice requirements of Rule 23. [Doc. No. 86, ¶ 3] Thus, Helmuth argues that certification of the Settlement Class as a Rule 23(b)(2) class is improper, and contends that Rule 23(b)(3) treatment is more appropriate.

Accordingly, Helmuth contends that the Settlement Class should not be certified under 23(b)(2), and that the Settlement terms are inherently unfair to the Class

---

[1] The Helmuth Objection was untimely under the CAFA standards. Thus, this Court is not obligated to address the merits of the Objection. However, in an abundance of caution and for purposes of completeness, it will address the substance of the arguments presented.

Members. In the alternative, if the Court decides to certify the Class and Settlement as presented, Helmuth asks the Court to exempt all Class Members who reside in the state of Florida (the "Florida carve out").

## 2. Response to the Helmuth Objection

On July 26, 2013, defendant filed a Response to the Helmuth Objection. [Doc. No. 88] Defendant argues that the Settlement is fair and reasonable, and resulted from serious, informed, and non-collusive arm's-length negotiations in the presence of the Court. [Doc. No. 88, p. 12] As to Helmuth's argument regarding the Class Members' inability to bring future class actions, defendant characterizes the right to act collectively as procedural, not substantive. Because the Class Members retain their right to pursue individual claims for actual and statutory damages, and because the named plaintiffs received only the $1,000.00 in statutory damages authorized under FDCPA, the Class Representatives and Class Members all have the same potential recovery. Thus, defendant argues, "[p]laintiffs are not receiving any preferential treatment nor are they diminishing the value of the class members' individual claims." [Doc. No. 88, p. 13]

As to Helmuth's argument that the proposed Settlement does not provide monetary relief directly to the class, defendant asserts that, given FDCPA's statutory scheme, it "would be impossible to provide any kind of meaningful monetary relief to the class members." [Doc. No. 88, p. 13] Regarding Helmuth's contention that FDCPA cases can never be certified as "no notice" Rule 23(b)(2) classes because injunctive relief is not available under FDCPA, defendant cites to numerous cases in which courts have certified FDCPA class actions under Rule 23(b)(2), where the value of the injunction outweighs any potential monetary relief. [Doc. No. 88, p. 15]

Although not squarely raised in the Helmuth Objection, defendant addresses arguments raised in companion cases regarding the value of a forward-looking injunction to the Class Members. Injunctive relief provided by Rule 23(b)(2) must provide relief to each member of the class. According to defendant, while the

Settlement does not provide monetary debt relief, it does provide a change in collection practices, which constitutes sufficient relief to satisfy Rule 23(b)(2). Defendant reasons that because certain Class Members' "debts are still due and outstanding and many of those accounts remain with [defendant] for collection," the injunction provides them with relief. [Doc. No. 88, p. 19] For those whose debts are either extinguished or no longer being processed by defendant, defendant contends that "given [Class Members'] troubled financial histories," the peace of mind offered by the injunction's protections sufficiently qualifies as relief. *Id.*

### 3. Helmuth's Reply to Defendant's Response

In her Reply to defendant's Response, Helmuth challenges the qualifications, experience, and financial resources of Class Counsel and reasserts claims regarding an alleged conflict of interest between Class Counsel, the Class Representatives, and the Class Members. [Doc. No. 91, ¶¶ 1-2] Helmuth also calls into question the value of a forward-looking injunction for the Class Members, arguing that "[d]ebt collectors typically seek to collect consumer debts for only three to six months before returning the debt to the original creditor as uncollectable." [Doc. No. 91, ¶ 4] Even worse, Helmuth contends, many Class Members who were the object of defendant's allegedly improper tactics may very well have paid the alleged debts as a direct result of these tactics. *Id.*

### 4. Sur-Reply by Class Counsel

In response to Helmuth's Objection and Reply, Class Counsel submitted a Sur-Reply describing their experience with class actions, justifying the award of attorneys' fees, and re-iterating that the parties reached an agreement on the class issues before discussing fees. [Doc. No. 92-1] In addition, Class Counsel asserts that there is nothing improper about each Class Representative receiving $1,000.00, and contends that the Settlement does provide the Class Members with a benefit.

Contrary to Helmuth's representations that they have never been appointed as counsel in other class actions, Class Counsel argues that Mr. Schroth and Mr. Stern

have been appointed in one and ten prior actions, respectively. [Doc. No. 92-1, ¶¶ 2-3] Regarding the reasonableness of fees, they cite the age of the case as well as defendant's vigorous resistance of the claims asserted. Specifically, Class Counsel defended a substantial Motion for Judgment on the Pleadings and subsequently opposed defendant's attempt to seek an interlocutory appeal of the same. [Doc. No. 92-1, ¶¶ 11-12] In addition, the parties conducted discovery and engaged in two day-long settlement conferences with Magistrate Judges. For these reasons, Class Counsel concludes that "the Objector wrongfully attacks the [S]ettlement's fee cap of $67,500 as if it were some sort of payoff." [Doc. No. 92, ¶ 22]

**E.     The Final Fairness Hearing**

On August 28, 2013, a Fairness Hearing was held before the undersigned Magistrate Judge. [Doc. No. 96] Appearing on behalf of the plaintiffs were Class Counsel Robert Schroth (in person) and Philip Stern (telephonically). Appearing for defendant were attorneys David Hartsell and Susan Germaise. Appearing on behalf of Objector Bernadette Helmuth were attorneys Steven Bronson (in person) and Don Yarbrough (telephonically). The Court heard argument from counsel regarding certification of this matter as a Rule 23(b)(2) injunctive class, the fairness, reasonableness, and adequacy of the proposed settlement terms, and the objections raised by Helmuth. David Hartsell argued on behalf of final approval of the Settlement Agreement, asserting many of the points already raised in the proposed Settlement [Doc. No. 81] and papers submitted [Doc. Nos. 86, 88, 91, 92] related to the Helmuth Objection. Mr. Hartsell further argued that the right to form class actions is a "procedural" one, and that this lawsuit benefitted all Class Members by driving defendant's compliance with the FDCPA, a remedial statute in nature.

Mr. Bronson argued on behalf of the Objector, challenging the adequacy of representation provided by the Class Representatives and Class Counsel. Specifically, Mr. Bronson characterized the $1,000.00 award to each Class Representative as an incentive award, and stated that the disparity in treatment between the Class

Representatives and Class Members created an inherent conflict of interest. Mr. Bronson further argued that Class Counsel lacked the requisite commitment to represent the interests of the entire class, stating that Class Counsel was prepared to abandon the class claims during a February 17, 2012 settlement conference with Magistrate Judge Adler. In addition, Mr. Bronson again called into the question the qualifications of Class Counsel in handling consumer class action matters.

The Court inquired about the existence of any choice of law issues or "side deals" made with any Class Members outside of the record presented to the Court. Mr. Hartsell stated there were no choice of law issues, as no claims were being waived. To the contrary, he represented that all Class Members' individual claims were preserved and the only thing being extinguished by the Settlement was the procedural right to form a class or mass action. Further, Mr. Hartsell represented that no side deals had been made, that Class Counsel's consideration of abandoning the class claims during the conference with Magistrate Judge Adler stemmed from defendant's initial unwillingness to consider injunctive relief, and that class negotiations were re-ignited upon defendant's change in stance regarding injunctive relief. As to the Objector's collusion arguments, Mr. Hartsell represented that negotiations regarding attorneys' fees and costs for Class Counsel were initiated after a consensus was reached on the class issues. Mr. Hartsell stated that while injunctive relief is not statutorily available under FDCPA, injunctive relief has been a component of many FDCPA settlements and that, as a remedial statute intended to drive compliance, the injunctive relief along with the *cy pres* award to an organization promoting financial literacy achieves the statute's ultimate goal.

Given that defendant's voicemail messages at issue in the Helmuth case are substantially similar to the messages at issue in this action, the Court asked the parties what additional benefit the Florida carve-out would achieve for the Florida class members that could not be achieved through the Settlement in this case. Mr. Hartsell stated none, as the best possible result the Florida plaintiffs could hope to achieve in

either a class or individual capacity would be the $1,000.00 per plaintiff in statutory damages. Given that the Class Members are still able to pursue their individual claims under the terms of the present Settlement, Mr. Hartsell asserted that the only possible motivation behind the Florida carve-out was a desire to generate and capture additional attorneys' fees through a separate action. Mr. Bronson argued that, because the Florida putative class is smaller (estimated 4,000 people), the Florida class members would have the opportunity to recover some monetary award. Mr. Hartsell argued that, based upon the statutory formula, any estimated recovery would be nominal ($35,000.00 ÷ 4,000), or $8.75 per member.

At the conclusion of the hearing, the Court advised the parties that it would take the oral presentations and written submissions of counsel under submission and issue a written order.

## II. DISCUSSION

### A. Final Approval of the Settlement Class and the Settlement

When parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, the Court must first assess whether a class exists. If so, the Court must then determine whether the proposed settlement is fundamentally fair, adequate, and reasonable. *Id.*

### 1. Class Certification

A plaintiff seeking to certify a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a). FED.R.CIV.P. 23(a)-(b). Once subsection 23(a) is satisfied, the purported class must fulfill the requirements of Rule 23(b)(2). In the present case, plaintiffs seek to certify a class for settlement purposes only. [Doc. No. 81, ¶ 31] As defined in the Settlement Agreement, the Settlement Class includes all persons who received an allegedly FDCPA infringing voicemail message from defendant during the period April 15, 2008 (one year prior to

the filing of the lawsuit) through August 19, 2011 (when defendant adopted a standardized message for calls made to consumers). *Id.*

### a. Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and, (4) adequacy of representation. FED.R.CIV.P. 23(a). For the reasons set forth below, this Court concludes that all Rule 23(a) requirements have been satisfied.

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). Courts generally acknowledge that numerosity exists when the class consists of forty or more members. *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007). Defendant estimates (and plaintiffs do not dispute) that the proposed Settlement Class is in excess of four million persons. [Doc. No. 88, p. 7] Such a large number of members is far too numerous to be joined as individual plaintiffs in this action. Accordingly, numerosity is satisfied.

Commonality is present if there are "questions of law or fact common to the class." FED.R.CIV.P. 23(a)(2). "One significant issue common to the class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007) (en banc) (citations omitted). The limited questions of law and fact at issue in this case are (1) whether defendants transmitted consumer collection calls in violation of FDCPA; and, (2) whether certain plaintiffs were on the receiving end of said calls. Therefore, the commonality requirement is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED.R.CIV.P. 23(c). Typicality "[is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they

09cv780-KSC

need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Southwest v. Falcon*, 475 U.S. 147, 156 (1982). Here, the Class Representatives and the Class Members all claim the same injury, namely receipt of phone calls from defendant in violation of FDCPA. Thus, the claims of the Class Representatives are reasonably co-extensive with the claims of Class Members and typicality is satisfied.

Adequacy of representation requires that the class representative(s) be able to "fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). This means that the class representatives must have no conflicts of interest with the class and must be able to prosecute the action vigorously. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). In addition, class counsel must possess the competence to undertake the litigation. *Id.* There are no apparent conflicts of interest between the Class Representatives and the Class Members in this case. To the contrary, the Class Representatives and Class Counsel have pursued the interests of the class by participating in numerous meetings and conferences, and Class Counsel has zealously prosecuted this case at all stages, including a vigorous defense against defendant's Motion for Judgment on the Pleadings and an attempted interlocutory appeal to the Ninth Circuit of the same. In addition, Class Counsel has "considerable experience in handling class actions, consumer protection cases and complex litigation," [Doc. No. 81, ¶ 27] including being appointed as counsel in numerous other prior class action cases. [Doc. No. 92-1, ¶¶ 2-3] For all of these reasons, the Court finds that the adequacy of representation requirement is met in this case. Plaintiffs Koby, Simmons, and Supler are confirmed as Class Representatives, and Philip D. Stern and Robert E. Schroth are confirmed as Class Counsel.

Accordingly, the Court finds plaintiffs meet the four requirements of Rule 23(a).

### b.    Rule 23(b)(2) Requirements

Once an action meets the requirements of Rule 23(a), it may be maintained only

if it meets one of three additional requirements under Rule 23(b). In this case, the parties seek certification for settlement purposes only under Rule 23(b)(2). This type of certification is appropriate where the defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ... with respect to the class as a whole." FED.R.CIV.P. 23(b)(2); *Rodriguez*, 591 F.3d at 1125. Thus, plaintiffs must establish that declaratory or injunctive relief benefitting the class as a whole is appropriate. This inquiry is "encompassed by the commonality requirement of Rule 23(a)." *See Diaz v. Hillsborough Cnty. Hosp. Auth.*, 165 F.R.D. 689, 695 (M.D. Fla. 1996); *accord McManus v. Fleetwood Enter., Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) ("Rule 23(b)(2)'s requirement that a defendant have acted consistently towards the class is plainly more permissive than 23(b)(3)'s requirement that questions to the class predominate over individual issues."). As stated by the Ninth Circuit in *Dukes*, for certification under Rule 23(b)(2) to be warranted, injunctive relief must also be the predominant form of relief sought by the class. *Dukes*, 603 F.3d at 617; FED.R.CIV.P. 23(b)(2) Advisory Committee's Note (1966).

Certification pursuant to Rule 23(b)(2) is appropriate here because (1) the claims in this case are based upon defendant's generally similar and consistent actions towards the class; and, (2) the class claims for injunctive relief predominate over any claimed monetary damages. As to the first point, defendant is accused of leaving voice messages for consumers (the Class Members) that failed to disclose the purpose or nature of the call, and that the call was from a debt collector. The injunctive relief to be afforded under the terms of the Settlement correlates directly to defendant's practice of making such calls.

As to the second point, the Ninth Circuit adopted a new test for resolving this question in *Dukes*: "To determine whether monetary relief predominates, a district court should consider, on a case-by-case basis, the objective 'effect of the relief sought' on the litigation." *Dukes*, 603 F.3d at 617. Given the size of the Settlement Class as well as FDCPA's statutory cap on damages available to be distributed to the class (1%

of defendant's net worth), there is only $35,000.00 statutorily available to be distributed to the roughly 4 million class members. This works out to $0.00875 per class member – an amount that is economically impossible to distribute. Further, FDCPA's statutory cap on damages available to the individually named plaintiff's is $1,000.00 per individual.[2] Lastly, for the purpose of ensuring that defendant is not perceived as evading FDCPA's remedial purpose, as well as the potential estimated $35,000.00 in statutory liability, defendant will pay that exact sum in the form of a charitable donation to a California-based veteran's group to promote financial literacy programs.

Considering all of these factors, the Court finds that injunctive relief predominates over any monetary damages. Despite the Objector's assertions to the contrary, and although injunctive relief is not expressly available under FDCPA, numerous courts have certified FDCPA class actions pursuant to Rule 23(b)(2), especially in cases where money damages would be so *de minimis* that the value of the injunction outweighs any potential monetary relief. *See, e.g., Del Campo v. American Corrective Counseling*, 254 F.R.D. 585 (N.D. Cal. 2008); *Schwarm v. Craighead*, 233 F.R.D. 655 (E.D. Cal. 2006); *Foti v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 16511, at *12 (S.D.N.Y. Feb. 19, 2008) (approving FDCPA 23(b)(2) class settlement awarding injunctive relief where monetary damages would be *de minimis* in comparison to any potential monetary relief).

Given that the distribution to the class would be economically impossible, and that the Settlement expressly reserves Class Members' right to individually pursue their FDCPA claims, the Court finds that injunctive relief predominates and that certification pursuant to Rule 23(b)(2) is appropriate.

Although this action initially sought monetary damages only, the landscape of the litigation changed during the two all-day settlement conferences with federal

---

[2] Although the 3 named plaintiffs are each receiving the statutory maximum of $1,000.00 for serving as Class Representatives, the Settlement expressly reserves Class Members' right to individually pursue their own FDCPA claims.

09cv780-KSC

Magistrate Judges when these aforementioned manageability issues presented. This, along with defendant's eventual willingness to entertain injunctive relief as a component of settlement, drove the parties towards the Settlement.

### 2. The Settlement

Rule 23(e) requires the Court to determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Staton*, 327, F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026). To make this determination, the Court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and, (7) the reaction of class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026. Further, the settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).

On January 30, 2013, after reviewing the proposed Settlement in light of the above factors, the Court concluded that preliminary approval was appropriate. At the preliminary approval stage, the Court needed to only "determine whether the proposed settlement [was] within the range of possible approval." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). However, a more robust analysis of the factors is required after the Court conducts the final fairness hearing. *Alberto*, 252 F.R.D. at 665. On August 28, 2013, a Fairness Hearing was held. [Doc. No. 96] For the reasons articulated in greater detail below, these factors favor a finding of fairness, reasonableness, and adequacy, and demonstrate that the Settlement falls within the range of settlements qualified for judicial approval and is in the best interest of the Settlement Class.

/ / /

/ / /

### a. The strength of plaintiffs' case, the risk of continued litigation, the risk of maintaining class action status through the trial, and the amount offered in settlement.

"Every class action involves a degree of uncertainty on the merits." *In re Lifelock, Inc. Mktg. and Sales Practices Litig.*, 2010 WL 3715138 at *4 (D. Ariz. 2010). Given this uncertainty, in assessing the reasonableness of a settlement, courts look at the perceived strength of a plaintiff's case in comparison to the amount offered in settlement. *Id.* (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010)). In this case, the legal and factual issues presented are relatively straightforward. However, the parties recognize the risk and expense inherent in continued litigation, and thus agree that there is substantial uncertainty regarding the outcome of both the class certification and liability phases. [Doc. No. 81, ¶¶ 23-25] In weighing this risk with the benefits provided by the Settlement, many courts have approved settlements where the consideration offered consists of injunctive relief. Here, the Settlement provides for injunctive relief which benefits past, present, and future parties receiving collections calls from defendant. As previously referenced, as a result of this litigation, defendant has made substantial reforms to its business practices, namely drafting a new script for future collections calls. Although the Settlement does not afford monetary payments to Class Members, it specifically reserves their right to pursue individualized FDCPA claims against defendant – a statute whose scheme (including a right to attorneys' fees) promotes and facilitates the bringing of individualized claims. Weighing the uncertainty of litigation against the substantial relief provided by the Settlement, the Court finds these factors strongly favor granting final settlement approval.

### b. The stage of the case, and the experience and views of counsel.

The parties have litigated this action, and related actions, for over three years. During this time period, they have conducted discovery, initiated and adjudicated dispositive motions, and pursued an interlocutory appeal to the Ninth Circuit Court of

Appeals. In addition, they attended and actively participated in two full-day settlement conferences with two different federal Magistrate Judges in the Southern District of California. This experience has sufficiently enabled the parties and counsel to assess the risks of proceeding as opposed to settling. *See Vasquez*, 266 F.R.D. at 489 ("the litigation had proceeded to a point in which both plaintiffs and defendants 'ha[d] a clear view of the strengths and weaknesses of their cases.'"). Through these efforts, counsel for all parties have demonstrated their substantial experience in litigating class actions and other complex litigation. In asking the Court to approve the Settlement, counsel represent that the proposed Settlement is the result of serious, informed, arms-length negotiations. [Doc. No. 81, ¶¶ 27-28; Doc. No. 88, p. 12] The Court agrees. These considerations also weigh in favor of final approval of the Settlement. *Vasquez*, 266 F.R.D. at 489 (courts should give great weight to the recommendations of counsel).

### c. The reaction of the class to the proposed settlement.

Pursuant to the Class Action Fairness Act of 2005, and as required under Rule 23(b)(2), defendant provided notice of settlement to 57 federal, state, and territorial government officials. 28 U.S.C. § 1715; FED.R.CIV.P. 23(b)(2). The 90-day period for any official to respond or object lapsed without any response or objection being received. [Doc. No. 85, ¶ 2] "This weighs heavily in favor of settlement approval." *In re Lifelock*, 2010 WL 3715138 at *6 (citing *IUE-CWO v. Gen. Motors Corp.*, 238 F.R.D. 583, 590 (E.D. Mich. 2006)).

However, on June 27, 2013, Helmuth filed an Objection [Doc. No. 86], arguing that the Settlement is unfair because it affords no monetary relief to the unnamed class members, provides no individualized notice or mechanism to opt-out, and improperly certifies the Settlement Class as a Rule 23(b)(2) class, even though FDCPA does not provide for injunctive relief and the plaintiffs initially and primarily sought monetary relief. [Doc. No. 86, ¶¶ 2, 4] The parties persuasively demonstrated in their responses [Doc. Nos. 88, 92] to the Helmuth Objection that none of these objections are justified. Specifically, individualized notice and an opportunity to opt-out are not required under

Rule 23(b)(2), and many FDCPA classes have been certified under Rule 23(b)(2) even though the FDCPA does not expressly provide for injunctive relief. In addition, the Court finds that Helmuth's attacks on Class Counsel's qualifications are unfounded, and that claims regarding a conflict between the Class Representatives and Class Members lack merit.

Taking all of these factors into consideration, the Court finds the Settlement to be fundamentally fair, adequate, and reasonable, as required under Rule 23(e).

**B.      Final Approval of Attorneys' Fees and Award for Class Representatives**

The parties have moved the Court to award $67,500.00 in attorneys' fees and costs, and $1,000.00 in individual awards for each of the three Class Representatives. Given the age of the case, as well as the extensive efforts [Doc. No. 81, ¶ 26] expended in discovery, at numerous settlement conferences, meetings and conferences, and an attempted interlocutory appeal to the Ninth Circuit, the request for attorney's fees and costs of $67,500.00 is reasonable.[3] Further, the proposed individual awards for the three named plaintiffs are reasonable, as the amount matches an individual claimant's maximum possible statutory recovery under FDCPA. There is no adversarial relationship between the Class Representatives and the Class Members because the Settlement does not involve a common fund and because the Class Members reserve their right, on an individual basis, to pursue and receive statutory damages.

Accordingly, the Court approves the award of attorneys' fees for Class Counsel and the award of $1,000.00 for each of the three Class Representatives.

/ / /

/ / /

/ / /

---

[3] At the January 30, 2013 Mandatory Settlement Conference, the Court discussed with the parties the number of hours Class Counsel had invested in this case. Although Class Counsel never formally submitted a billing statement evidencing such, given the number of docket entries in this matter (in excess of 90), the age of the case (over 4 years old), the motion practice involved and the number of appearances made, this Court is confident in its determination regarding the reasonableness of Class Counsel's fees and costs.

## III. CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED**:

1. The Settlement Agreement and the terms therein are fair, just, reasonable, and adequate as to the settling parties, including the Settlement Class, and is hereby finally approved in all respects. The parties are hereby directed to perform the terms of the Settlement Agreement.

2. Solely for the purpose of effectuating the Settlement, the Court certifies the Settlement Class, defined as all persons who received a telephonic voicemail message from defendant in connection with an attempt to collect a debt, in which the message allegedly failed to identify defendant as the caller, to state to the purpose or nature of the call, or to disclose that the call was from a debt collector, during the period April 15, 2008 through August 19, 2011. For the reasons stated in greater detail above, the Court finds that the Settlement Class meets the legal requirements for class certification under Federal Rule of Civil Procedure 23, specifically Rule 23(b)(2).

3. In accordance with Rule 23 and the requirements of due process, the Settlement Class has been given proper and adequate notice of the Settlement and Fairness Hearing. The parties have complied fully with the notice provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

4. Philip D. Stern and Robert E. Schroth (collectively referred to as "Class Counsel"), having conferred a benefit on absent Class Members and having expended efforts to secure injunctive relief for the Class, are entitled to fees and costs. Accordingly, the Court approves the application by Class Counsel for attorneys' fees and costs in the total amount of $67,500.00. This amount is payable as set forth in the Settlement Agreement.

5. The Court further approves a payment of $1,000.00 to the following Class Representatives for the initiation of this action, work performed, and risks undertaken in this matter: Michael Koby, Michael Simmons, and Jonathan Supler.

6. The Court hereby enters judgment approving the terms of the Settlement

Agreement and ordering that the action be dismissed on the merits with prejudice in accordance with the Settlement. The Complaint is dismissed on the merits with prejudice on a class-wide basis. This document shall constitute a final judgment for purpose of Rule 58 of the Federal Rules of Civil Procedure.

7. Without affecting the finality of the Judgment, the Court shall retain jurisdiction of this action for the purpose of resolving any disputes that may arise as to the implementation of the terms of the Settlement.

**IT IS SO ORDERED.**

Date: October 2/ , 2013

KAREN S. CRAWFORD
United States Magistrate Judge

09cv780-KSC