

**FILED**

Apr 20 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ AKR        DEPUTY

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MICHAEL P. KOBY, an individual, on behalf of themselves and all others similarly situated; et al.,

   Plaintiffs - Appellees,

BERNADETTE M. HELMUTH,

   Objector - Appellant,

UNITED STATES OF AMERICA,

   Intervenor,

 v.

ARS NATIONAL SERVICES, INC., a California Corporation and JOHN AND JANE DOES, 1 through 25, inclusive,

   Defendants - Appellees.

No. 13-56964

D.C. No. 3:09-cv-00780-KSC
U.S. District Court for Southern California, San Diego

**MANDATE**

  The judgment of this Court, entered January 25, 2017, takes effect this date.

  This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

Costs are taxed against the Plaintiffs-Appellees Koby, et al. and Defendants-Appellees ARS National Services, Inc. in the amount of $128.60.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Jessica F. Flores Poblano
Deputy Clerk
Ninth Circuit Rule 27-7

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL P. KOBY, an individual; MICHAEL SIMMONS, an individual; and JONATHAN SUPLER, an individual, on behalf of themselves and all others similarly situated,<br>*Plaintiffs-Appellees*, | No. 13-56964<br><br>D.C. No.<br>3:09-cv-00780-KSC<br><br><br>OPINION |
| BERNADETTE M. HELMUTH,<br>*Objector-Appellant*, | |
| UNITED STATES OF AMERICA,<br>*Intervenor*, | |
| v. | |
| ARS NATIONAL SERVICES, INC., a California corporation; JOHN AND JANE DOES, 1 through 25, inclusive,<br>*Defendants-Appellees.* | |

Appeal from the United States District Court
for the Southern District of California
Karen S. Crawford, Magistrate Judge, Presiding

Argued and Submitted January 7, 2016
Pasadena, California

2                              KOBY V. HELMUTH

Filed January 25, 2017

Before:  Paul J. Watford and Michelle T. Friedland, Circuit
Judges, and J. Frederick Motz,[*] District Judge.

Opinion by Judge Watford

**SUMMARY**[**]

**Class Action Settlement / Magistrate Judges**

The panel reversed a magistrate judge's order approving
a class action settlement in a suit brought against a debt
collection agency under the Fair Debt Collection Practices
Act.

The panel held that the magistrate judge had the authority
to enter final judgment under 28 U.S.C. § 636(c) because she
obtained the consent of the named plaintiffs and the
defendant.  Joining other circuits, the panel held that the
magistrate judge was not required to obtain the consent of the
four million additional class members who were not present
before the district court.  The panel also held that § 636(c)
does not violate Article III of the Constitution by permitting
magistrate judges to exercise jurisdiction over class actions
without obtaining the consent of each absent class member.

_____

[*] The Honorable J. Frederick Motz, District Judge for the U.S. District
Court for the District of Maryland, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

The panel held that the magistrate judge abused her discretion by approving the settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2) because there was no evidence that the injunctive relief afforded by the settlement had any value to the class members, yet to obtain it they had to relinquish their right to seek damages in any other class action. There was also no evidence that the absent class members would derive any benefit from the settlement's *cy pres* award. The panel remanded the case to the district court.

## COUNSEL

Jonathan Taylor (argued) and Deepak Gupta, Gupta Beck PLLC, Washington, D.C.; Donald A. Yarbrough, Fort Lauderdale, Florida; Steven M. Bronson, The Bronson Firm APC, San Diego, California; for Objector-Appellant.

Philip D. Stern (argued), Union, New Jersey; Robert E. Schroth, Sr. and Robert E. Schroth, Jr., Schroth & Schroth, San Diego, California, for Plaintiffs-Appellees.

Sean P. Flynn (argued), Gordon & Rees Scully Mansukhani, Irvine, California; David L. Hartsell, McGuire Woods LLP, Chicago, Illinois; for Defendant-Appellee.

Brian Wolfman, Institute for Public Representation, Georgetown University Law Center, Washington, D.C.; Ira Rheingold, National Association of Consumer Advocates, Washington, D.C.; for Amicus Curiae National Association of Consumer Advocates.

## OPINION

WATFORD, Circuit Judge:

The magistrate judge in this case approved a class action settlement in which the named plaintiffs and class counsel got what they wanted but the remaining four million class members got worthless injunctive relief. In exchange for receiving nothing of value, the class members gave up their right to assert damages claims against the defendant in any other class action. We are asked to decide two issues: whether the magistrate judge had the authority to exercise jurisdiction without obtaining the consent of all four million class members; and, assuming we get past that issue, whether the magistrate judge abused her discretion by approving the settlement as fair, reasonable, and adequate.

I

The named plaintiffs are Michael Koby, Michael Simmons, and Jonathan Supler. In April 2009 they sued ARS National Services, Inc., a debt collection agency, under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* They alleged that ARS violated §§ 1692d(6) and 1692e(11) of the FDCPA by leaving voicemail messages in which the callers failed to disclose (1) that they worked for ARS, (2) that ARS is a debt collector, or (3) that the purpose of the call was to collect a debt. The named plaintiffs brought the action on behalf of everyone in the United States who received a voicemail message from ARS which failed to disclose that information. The class consists of some four million people nationwide.

The named plaintiffs requested "maximum statutory damages," which vary under the FDCPA depending on the nature of the action being brought.  In an individual action, a plaintiff may recover any actual damages suffered plus statutory damages up to $1,000.  § 1692k(a)(1), (a)(2)(A).  In a class action, the named plaintiffs may recover actual damages plus statutory damages up to $1,000, but the damages award for the rest of the class is capped at $500,000 or 1% of the defendant's net worth, whichever is less.  § 1692k(a)(2)(B).

In August 2011, after the district court denied ARS's motion to dismiss the case on the pleadings, the parties began discussing settlement.  Around the same time, ARS voluntarily adopted a new, standardized voicemail message which requires its employees to disclose that they work for ARS, that ARS is a debt collector, and that they are calling to collect a debt.  The parties agree that this new voicemail message complies with the FDCPA.

Over the course of more than a year, the parties engaged in settlement discussions with the assistance of a magistrate judge.  The named plaintiffs and ARS eventually consented to having the same magistrate judge conduct all further proceedings in the case, including the entry of final judgment. The district court entered an order authorizing the magistrate judge to exercise jurisdiction over the case, and she presided over all further proceedings.

In January 2013, following a full-day mandatory settlement conference before the magistrate judge, the parties finally hammered out a deal.  Under the terms of the settlement, the parties agreed to seek certification of a nationwide, settlement-only class under Federal Rule of Civil

Procedure 23(b)(2). The proposed class consisted of everyone in the United States who between April 2008 and August 2011 received a voicemail message from ARS that failed to identify ARS as the caller, disclose that the call was from a debt collector, or state that the purpose of the call was to collect a debt. (The parties chose those dates because April 2008 is the beginning of the applicable statute of limitations period and ARS ended the alleged FDCPA violations in August 2011, when it adopted the new voicemail message.) Because the class would be certified under Rule 23(b)(2), the parties agreed that no notice of any kind would be sent to the four million class members and that no one would be permitted to opt out of the class.

In terms of monetary payments, ARS agreed to pay each of the three named plaintiffs $1,000, the maximum they could hope to recover under the FDCPA as none of them had suffered any actual damages. ARS represented to the court (although it is unclear whether the magistrate judge took any steps to verify this fact) that its net worth was only $3.5 million, which meant the other four million class members could collectively recover no more than $35,000. Given the impossibility of distributing less than a penny to each member of the class, ARS agreed to make a $35,000 *cy pres* award to a local San Diego charity instead. ARS also agreed to pay class counsel the negotiated sum of $67,500 in attorney's fees.

The four million unnamed class members receive no monetary compensation under the settlement. They are, however, the beneficiaries of a stipulated injunction to be entered against ARS as part of the settlement. The injunction requires ARS to continue using, for a period of two years, the new voicemail message it had already adopted voluntarily

back in August 2011. In return for that supposed benefit, the four million class members forfeit the right to seek damages from ARS as part of a class action. The class members retain the right to pursue damages claims against ARS on an individual basis.

As required by the Class Action Fairness Act, *see* 28 U.S.C. § 1715(b), ARS sent notice of the proposed settlement to the appropriate state and federal officials, none of whom objected to the settlement.

The four million class members did not receive individual notice of the proposed settlement, but one class member—the appellant in this case, Bernadette Helmuth—filed an objection. She is the named plaintiff in a separate class action against ARS pending in the district court for the Southern District of Florida. Her lawsuit alleges essentially the same FDCPA violations alleged in this case, except that she seeks certification of a much smaller class limited to Florida residents who owed money to a particular creditor on whose behalf ARS was attempting to collect. After the parties agreed to the settlement in this case, ARS asked the district court in Florida to stay all further proceedings in Helmuth's case on the ground that, if approved, the settlement would bar her case from proceeding as a class action. The district court in Florida agreed to stay Helmuth's action pending final approval of the settlement.

In her objection to the settlement, Helmuth argued, among other things, that the settlement was unfair and unreasonable because class members would be barred from pursuing damages claims as part of a class action but would receive nothing of value in return. (Helmuth did not object to the magistrate judge's authority to approve the settlement and

8                          KOBY V. HELMUTH

enter judgment, so we express no view on the propriety of
having the same judge who assisted the parties in negotiating
a settlement decide whether the settlement should be
approved as fair and reasonable.)  After conducting a fairness
hearing at which Helmuth's counsel, ARS's counsel, and
class counsel presented argument, the magistrate judge
certified the proposed class under Rule 23(b)(2); approved the
settlement as fair, reasonable, and adequate under Rule
23(e)(2); and entered judgment accordingly.  Having objected
to the settlement in the district court, Helmuth is entitled to
challenge the court's rulings on appeal.  *See Devlin v.
Scardelletti*, 536 U.S. 1, 14 (2002).

## II

Before reaching the merits, we must be sure we have
jurisdiction to decide this appeal.  That inquiry requires more
work here than in most cases.  Our jurisdiction is triggered
only if the magistrate judge had the authority to enter final
judgment under 28 U.S.C. § 636(c).  *See Anderson v.
WoodCreek Venture Ltd.*, 351 F.3d 911, 913–14 (9th Cir.
2003).  Section 636(c) authorizes magistrate judges, "[u]pon
the consent of the parties," to "conduct any or all proceedings
in a jury or nonjury civil matter and order the entry of
judgment in the case, when specially designated to exercise
such jurisdiction by the district court or courts he serves."
28 U.S.C. § 636(c)(1).  When a magistrate judge is authorized
to enter final judgment, "an aggrieved party may appeal
directly to the appropriate United States court of appeals from
the judgment of the magistrate judge in the same manner as
an appeal from any other judgment of a district court."
§ 636(c)(3).

No one disputes that the district court properly designated the magistrate judge to exercise jurisdiction in this case. Nor is there any dispute that the named plaintiffs and ARS consented to the magistrate judge's exercise of jurisdiction. The only question is whether the statute required not just the consent of the named plaintiffs, but also the consent of the four million class members who were not present before the court (we will refer to them as the absent class members). We conclude that the statute requires the consent of the named plaintiffs alone and join three other circuits that have reached the same conclusion. *See Day v. Persels & Associates, LLC*, 729 F.3d 1309, 1316 (11th Cir. 2013); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012); *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998).

As a purely linguistic matter, § 636(c)(1)'s reference to the consent of "the parties" could be read to encompass both the named plaintiffs and the absent class members, for the term does not have a single fixed meaning. In some contexts absent class members are treated as parties, *see In re Cement Antitrust Litigation*, 688 F.2d 1297, 1307–10 (9th Cir. 1982) (judicial recusal statute), while in other contexts they are not, *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) (diversity jurisdiction statute). As the Supreme Court has observed, absent class members may be treated as parties "for some purposes and not for others." *Devlin*, 536 U.S. at 10.

Viewing § 636(c) as a whole, it seems clear that Congress did not intend absent class members to be treated as parties in this context. In § 636(c)(2), which specifies the procedures for obtaining party consent under (c)(1), the phrase "the parties" is used multiple times in a way that cannot sensibly

be read to include absent class members.[1]  For example, the provision states that when a magistrate judge has been designated to exercise jurisdiction under (c)(1), "the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction."  In virtually all class actions, it would be impossible for the clerk of court to issue this notice to absent class members at the time the action is filed.  The identities of all absent class members will often not be known until later in the case, after at least preliminary discovery has been conducted.  Even if the identities of all absent class members are known at the outset of the case, the clerk would need to compile their names and contact information in order to send the required notice, since that information will not appear in the complaint.  And in large class actions, the cost of sending each class member notice of the availability of a magistrate judge would be prohibitive even for the most well-funded district courts.  We doubt Congress would have imposed

---

[1] Section 636(c)(2) provides:

> If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction.  The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences.  Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.

these substantial budgetary and manpower burdens on clerks' offices across the country without making that intent explicit.

There is an additional reason to believe that Congress intended to require the consent of only the named plaintiffs under § 636(c)(1).  As a general matter, the named plaintiffs in a properly certified class action are charged with conducting the litigation on behalf of the class they represent; by definition class actions involve too many plaintiffs to allow each to participate personally.  *See* Fed. R. Civ. P. 23(a)(1).  The named plaintiffs serve as representatives of the class and in that capacity are authorized to decide matters of litigation strategy, such as which claims to assert or drop, what discovery to take, what motions to file, and so forth. Deciding whether to consent to a magistrate judge is a matter of litigation strategy of the same order.  In fact, it is probably less consequential to the outcome than other decisions the named plaintiffs are ordinarily called upon to make, such as deciding whether to consent to a bench trial or choosing which issues to raise on appeal from an adverse verdict.  It would therefore have been sensible for Congress to assume that the named plaintiffs in a class action will decide, on behalf of the absent class members, whether to consent to the jurisdiction of a magistrate judge.[2]

---

[2] It is true that the consent required under § 636(c)(1) is usually given at the outset of the case before a class has been certified, at which point the named plaintiffs lack the authority to bind the absent class members. *See Standard Fire Insurance Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013).  That simply means if the class is never certified, the absent class members will not be bound by the named plaintiffs' decision to grant consent.  If the class is certified and the case proceeds to judgment, however, the named plaintiffs' litigation-related decisions are no less binding merely because they occurred before the class certification order was entered.

12                           KOBY V. HELMUTH

With that issue of statutory interpretation resolved, the jurisdictional analysis is straightforward. Congress has authorized magistrate judges to enter judgment in a class action so long as the named parties to the action have consented, and here the named plaintiffs and ARS have done so. Thus, an appeal from the judgment entered by the magistrate judge may be taken directly to our court "in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3).

The only remaining issue is whether § 636(c) is constitutionally valid. The National Association of Consumer Advocates, appearing as a friend of the court, argues that the statute is unconstitutional, at least as applied to class actions. In its view, § 636(c) violates Article III of the Constitution by permitting magistrate judges to exercise jurisdiction over class actions without obtaining the consent of each absent class member.

Article III grants judges who wield the judicial power of the United States life tenure during good behavior and a guaranteed salary that may not be diminished. These protections are designed to ensure the independence and impartiality of the judicial officers authorized to decide the merits of a litigant's case. The Supreme Court has held that litigants in federal court have a personal right, conferred by Article III, to insist upon adjudication of their claims by a judge who enjoys the salary and tenure protections afforded by Article III—protections that magistrate judges lack. *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 848 (1986); *see Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 542 (9th Cir. 1984) (en banc). But the personal right to an Article III adjudicator may be waived, and a party's express or implied

consent to adjudication by a magistrate judge constitutes a valid waiver of the right. *Roell v. Withrow*, 538 U.S. 580, 590 (2003).

So the question becomes whether Article III categorically prohibits the named plaintiffs from waiving, on behalf of the class members they represent, the right to proceed before an Article III judge. A categorical prohibition of that sort might be warranted if the interests of the named plaintiffs and the absent class members frequently diverged with respect to exercise of the right at issue. But the opposite is true of the right to have a case heard by an Article III judge. To serve as class representatives, the named plaintiffs must have claims that are typical of the claims held by the class, and in conducting the litigation the named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(3)–(4). When those requirements are met, the interests of the named plaintiffs and absent class members will almost always be aligned when it comes to deciding whether to consent to a magistrate judge's jurisdiction. Barring unusual circumstances, the named plaintiffs will have as strong an interest as the absent class members in having their claims adjudicated by an independent and impartial decisionmaker. The named plaintiffs can therefore be expected to protect the absent class members' interests in the exercise of the right conferred by Article III.

There are constitutional limits, of course, on the named plaintiffs' authority to waive the rights of their fellow class members, but those limits are imposed by the Due Process Clause, not by Article III. Most fundamentally, as mandated by due process (and enforced through Federal Rule of Civil Procedure 23), the named plaintiffs' interests must in fact be aligned with those of the class, and the named plaintiffs must

adequately represent the interests of the class throughout the litigation. *Taylor v. Sturgell*, 553 U.S. 880, 900–01 (2008); *Hansberry v. Lee*, 311 U.S. 32, 41–43 (1940). In some instances, absent class members must also receive notice of the action and an opportunity to opt out. *Taylor*, 553 U.S. at 900; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

The absent class members in this case were not afforded notice and an opportunity to opt out. But we need not decide whether the Due Process Clause required those protections before the named plaintiffs could waive, on behalf of the class, the right to an Article III adjudicator. Any violation of the absent class members' due process rights would affect only the preclusive reach of the resulting class judgment in subsequent litigation. *See, e.g.*, *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224–26 (2d Cir. 2012) (lack of notice); *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994) (inadequate representation). Limits imposed by the Due Process Clause on the *enforcement* of class judgments do not curtail a magistrate judge's authority under § 636(c) to *enter* judgment in the first instance—a judgment that at the very least will bind the named parties who consented to the magistrate judge's jurisdiction. So any due process violation that might have occurred here would not deprive us of jurisdiction to decide this appeal, given that our jurisdiction is keyed to the magistrate judge's authority to enter final judgment. Moreover, due process issues involving the extent to which the judgment might bind absent class members in future litigation would arise only if we were to uphold the magistrate judge's order approving the settlement. Because we conclude below that the magistrate judge abused her discretion in entering that order, we are not faced with such due process issues here.

III

Under Federal Rule of Civil Procedure 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is "fair, reasonable, and adequate." When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members. As a result, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011). The decision to approve a class action settlement is reviewed for abuse of discretion. *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015).

The magistrate judge abused her discretion by approving the settlement in this case. The settlement should not have been approved for one primary reason: There is no evidence that the relief afforded by the settlement has any value to the class members, yet to obtain it they had to relinquish their right to seek damages in any other class action.

The settlement's injunctive relief is worthless to most members of the class because it merely dictates the disclosures ARS must make in future voicemail messages for a period of two years. That relief could potentially benefit class members who are likely to be contacted by ARS during the two-year window, but there is an obvious mismatch between the injunctive relief provided and the definition of the proposed class. The class was not defined to include those who are likely to be contacted by ARS in the future; it

was defined to include those who had suffered a past wrong at ARS's hands—receiving a voicemail message between 2008 and 2011 that did not disclose certain information about the caller and the purpose of the call. The fact that a class member was a target of collection efforts sometime between 2008 and 2011, however, does not without more establish that he or she would likely be contacted by ARS again after October 2013, when the settlement was approved.

As the proponents of the settlement, ARS and the named plaintiffs bore the burden of demonstrating that class members would benefit from the settlement's injunctive relief, which required them to show that class members were likely to face future collection efforts by ARS. *See In re Dry Max Pampers Litigation*, 724 F.3d 713, 719 (6th Cir. 2013). They fell far short of carrying that burden. ARS and the named plaintiffs made no showing that members of the class continued to receive calls from ARS as part of ongoing efforts to collect debts that were by then two to five years old, a proposition doubtful enough that empirical data of some sort would be necessary to substantiate it. Nor did they show that class members were likely to become targets of ARS's collection efforts in the future. That would happen only if a class member failed to pay another debt, the debt got referred to a collection agency, and ARS turned out to be that agency. While some of the four million class members might find themselves in that predicament during the two-year span of the injunction, nothing in the record indicates that most class members would. In other words, ARS and the named plaintiffs provided no evidence to suggest that many, if any, members of the proposed class would derive a benefit from obtaining the injunctive relief afforded by the settlement.

Even for class members who might become targets of collection efforts by ARS in the future, the settlement's injunctive relief is of no real value. The injunction does not obligate ARS to do anything it was not already doing. It merely requires ARS to continue using the same voicemail message it voluntarily adopted back in 2011. ARS took that step for its own business reasons (presumably to avoid further litigation risk), not because of any court- or settlement-imposed obligation. ARS would therefore be unlikely to revert back to its old ways regardless of whether the settlement contained the stipulated injunction. *See Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000). To make matters worse, the settlement contained an escape clause that allowed ARS to seek dissolution of the injunction "at any time if there is a change in the law." Thus, if the litigation risk were reduced by a new court decision or legislative enactment—the only scenario in which ARS might be tempted to resume its prior conduct—ARS could seek to wriggle out of the injunction.

ARS and the named plaintiffs likewise presented no evidence that the absent class members would derive any benefit from the settlement's *cy pres* award. Indeed, it is doubtful that the award could be approved under our precedents, which require that *cy pres* awards be tethered to the objectives of the underlying statutes or the interests of the class members. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). Here, the award consists of a $35,000 donation to a San Diego veterans' organization. The San Diego location of the chosen charity has no geographic nexus to the class, which includes four million individuals scattered throughout the United States. Nor was there any evidence that the settlement class is disproportionately composed of veterans. And there was no showing that the work performed

by the designated charity would protect consumers from
unfair debt collection practices, the objective of the FDCPA.
Thus, even putting aside the relatively small size of the *cy
pres* award, we cannot say that this aspect of the settlement
provided any material benefit to the class members.

Because the settlement gave the absent class members
nothing of value, they could not fairly or reasonably be
required to give up anything in return.  Yet the settlement
requires absent class members to relinquish their right to
pursue damages claims against ARS as part of a class action.
The parties dispute whether that right has any real value to
the absent class members, given the FDCPA's cap on class
action damages.  ARS asserts that, with total damages capped
at $35,000, none of the absent class members have any hope
of obtaining meaningful monetary relief as part of another
class action because it would be impossible to define a class
small enough to afford individual recoveries of more than a
trivial amount.  Helmuth asserts, however, that the proposed
class in her pending Florida action might contain as few as
several hundred members, each of whom could recover
meaningful relief of roughly $100.[3]

We need not resolve the parties' dispute on this point.  It
is enough to conclude that the waiver of the right to seek

---

[3] The parties overlook the fact that the settlement also waives the
absent class members' right to pursue class action damages for claims
under state law, so they have not explored whether state-law analogues of
the FDCPA contain similar class action damages caps.  In States without
such a cap, the right to pursue class action damages under state law could
be considerably more valuable than the right to pursue such damages
under the FDCPA, as no court of which we are aware has held that the
FDCPA's damages cap preempts state statutes permitting a larger
recovery.

damages in future class actions has *some* value, and it plainly does. Very few class members would bother to file their own individual actions to recover minimal (or non-existent) actual damages and statutory damages capped at $1,000. For small-dollar claims like these, even under a statute with a fee-shifting provision, a class action is often the only realistic means of obtaining any monetary recovery. *See Shutts*, 472 U.S. at 809; *Crawford*, 201 F.3d at 882. Cutting off access to a procedural tool that may offer the only realistic means of obtaining monetary relief deprived the absent class members of something of value here, even if it might be worth relatively little. The fact that class members were required to give up anything at all in exchange for worthless injunctive relief precluded approval of the settlement as fair, reasonable, and adequate under Rule 23(e)(2).

Helmuth challenges the reasonableness of the settlement on other grounds, such as the disparity between what the named plaintiffs got and what the rest of the class members received, and she contends in addition that the class could not be certified under Rule 23(b)(2). In light of our disposition above, we need not address these remaining contentions.

**REVERSED and REMANDED**.