1
2
3
4
5
6
7
8                 UNITED STATES DISTRICT COURT
9                 SOUTHERN DISTRICT OF CALIFORNIA
10
11   MICHAEL P. KOBY, et al.,            Case No.: 3:09-cv-00780-KSC
12                        Plaintiffs,
                                         **ORDER RE MOTION TO COMPEL**
13   v.                                  **ARBITRATION**
14   ARS NATIONAL SERVICES, INC.,        **[Doc. No. 130]**
15                        Defendant.
16
17
18
19        Before the Court is defendant, ARS National Services' ("ARS"), Motion to Compel
20   Arbitration or, in the alternative, Motion to Dismiss. [Doc. No. 130].  For the reasons
21   discussed in greater detail below, Defendant's Motion to Compel Arbitration is **DENIED**
22   **WITHOUT PREJUDICE**.  The Court will reconsider defendant's Motion if refiled
23   following a limited, sixty (60) day discovery period, as described herein.
24                        <u>**FACTUAL BACKGROUND**</u>
25        On April 15, 2009, plaintiffs filed this case as a putative class action alleging that
26   defendant attempted to collect plaintiff's alleged debts in a manner that did not comport
27   with the FDCPA, 15 U.S.C. §1692 *et seq*., specifically §§ 1692d(6) and 1692e(11). [Doc.
28   No. 1]. The Complaint alleges that defendant left voice messages for consumers that failed

to disclose the purpose of the call or that the call was from a debt collector. [Doc. No. 1, p. 3].

On March 29, 2010, the Court entered an Order [Doc. No. 19] granting in part and denying in part defendant's Motion for Judgment on the Pleadings. Defendant's Motion was granted as to the claim that the message left with plaintiff Simmons violated section 1692e(11); however, all other claims survived. [Doc. No. 19, p. 10]. On July 21, 2010, the parties jointly moved to certify for appeal the Court's March 29, 2010 Order on defendant's Motion for Judgment on the Pleadings. [Doc. No. 24]. On December 23, 2010, the Court certified the March 29, 2010 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). [Doc. No. 42]. On December 29, 2010, defendant filed a petition for permission to appeal. [Doc. No. 43]. However, on March 28, 2011, the Ninth Circuit Court of Appeals denied defendant's petition for leave to appeal. [Doc. No. 44]

During the course of the litigation, and without any admission of liability, defendant ARS adopted a single, uniform, and consistent message for future consumer collection calls. This message was effectively implemented on August 19, 2011. [Doc. No. 81, ¶ 22]. Plaintiffs do not object to the revised message, nor do they contend that it violates the requirements of §§ 1692d(b) or 1692e(11) of the FDCPA. *Id*.

Shortly thereafter, the parties entered into settlement discussions. On February 17, 2012, the parties held a full-day Settlement Conference with Magistrate Judge Jan Adler. [Doc. No. 62]. While the case failed to settle on that date, several months of negotiations ensued, culminating in a January 30, 2013 full-day Mandatory Settlement Conference with the undersigned Magistrate Judge. [Doc. No. 80]. Following serious, informed, arms-length negotiations, the parties reached a settlement, the contents of which were placed on the record before Magistrate Judge Crawford that same day. In June, 2013, intervenor Bernadette M. Helmuth objected to the proposed settlement. [Doc. No. 86]. This Court held a fairness hearing on August 28, 2013, and issued a final approval of the settlement in October, 2013. [Doc. No. 97]. Intervenor Helmuth appealed the final Order of approval in

November, 2013 [Doc. No. 98], and three years later on April 20, 2017, the Ninth Circuit vacated the final Order of approval. [Doc. No. 117].

Following the Ninth Circuit's ruling, plaintiffs requested leave to amend the Complaint. The Court set a briefing schedule for plaintiffs to amend their Complaint [Doc. No. 123], and the First Amended Complaint ["FAC"] was filed on September 6, 2017. [Doc. No. 125].

## PROCEDURAL BACKGROUND

Defendant, ARS, filed its Motion to Compel Arbitration and/or Motion to Dismiss on November 6, 2017. [Doc. No. 130]. Plaintiffs filed an Opposition to the Motion to Compel Arbitration, which it style as an "Answer" to defendants "Petition" on December 16, 2017. [Doc. No. 135]. Plaintiffs filed their Opposition to the Motion to Dismiss the same day. [Doc. No. 134]. Defendant filed its Reply to Plaintiffs' Opposition on January 12, 2018. [Doc. No. 138].

## LEGAL STANDARD

The Federal Arbitration Act states that agreements to arbitrate are "valid, irrevocable and enforceable." 9 U.S.C. § 2. Section 4 provides that where there is an enforceable arbitration agreement, the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The language is mandatory, offering district courts no discretion where a valid arbitration agreement is signed. *Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The role of the court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration in any dispute which he has not agreed to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1996). If state law also governs the validity, revocability, and enforceability of contracts, generally, then state law determines

which contracts are enforceable and binding under the FAA. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Federal law controls the appropriate *scope* of the agreement, however. *Letiza v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("Because the issue involves the arbitrability of a dispute, it is controlled by application of federal substantive law rather than state law.").

Discovery in connection to a motion to compel is available "only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4). And the making of an arbitration agreement is in issue if a plaintiff alleges "that the arbitration clause was fraudulently induced, that one party had overwhelming bargaining power, or that the agreement does not exist." *Granite Rock Co. v. Int'l Broth. Of Teamsters,* 130 S. Ct. 2847 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). If a plaintiff requests discovery to contest a motion to compel arbitration, he may do so by also suggesting the evidence he anticipates to acquire from discovery and by identifying circumstances that raise doubt as to the formation of the agreement. *See, e.g., Ameriprise Fin. Services, Inc. v. Etheredge*, 277 F. App.'x 447, 449-50 (5th Cir. 2008); *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 521 (D.C. Cir. 2009).

## DISCUSSION

### I.    Choice of Law

Defendant contends Virginia law applies to this action. [Doc. No. 130-1 at pp. 7-9]. Plaintiffs, ultimately, do not dispute defendant's contention that if a valid contract exists, the Consumer Agreements attached as Exhibits to Mr. Beck's Declaration clearly have a choice of law clause identifying Virginia contract law. [Doc. No. 135 at pp. 6-7].

Federal common law applies to the choice-of-law rule determination because jurisdiction in this case is based on federal question. *See In re Sterba*, 852 F.3d 1175, 1179 (9th Cir. 2017); *see also Hyunh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Federal common law choice-of-law rules in the Ninth Circuit follows the Restatement (Second) of Conflicts of Laws approach "to the extent it is found persuasive."

*Flores v. American Seafoods Co.*, 335 F.3d 904, 919 (9th Cir. 2003). Courts honor the parties' choice-of-law to govern their disputed claims unless: (1) "the chosen state has no substantial relationship to the parties or the transaction", or (2) honoring the parties' choice "would be contrary to a fundamental policy of a state that has a materially greater interest" in the dispute. Restatement (Second) of Conflicts of Laws § 187(2) (1988).

Here, the Customer Agreements contain a governing law provision. [Doc. No. 130-3,4]. The Agreements state that the account will be governed by federal and Virginia law because the credit on the account extends from Virginia. [*Id.*]. This Court finds that Virginia has a substantial relationship to this dispute and application of Virginia law would not be contrary to any fundamental policy of California. Thus where applicable, this dispute is governed by Virginia law.

## II.    Whether a Contract Exists

Plaintiffs allege defendants have failed to show a contract was formed between plaintiffs and Capital One Bank, and that the Beck Declaration submitted by defendant is inadmissible hearsay. [Doc. No. 135 at pp. 6-10]. Plaintiffs assert defendant has not offered any evidence to suggest plaintiffs used a credit card from Capital One Bank, generally a necessary element for contract formation. [*Id.* at p. 7]; *see Bank of America v. Jarczyk*, 268 B.R. 17, 22 (W.D.N.Y. 2001) ("The issuance of a credit card constitutes a credit offer, and the use of the card constitutes acceptance of the offer."). ARS appeals primarily to logic in response. [Doc. No. 138 at p. 3]. "If there was no use, then there was no debt" and without debt "there would  be no collection all messages", so the agreements identified in the Beck declaration and the very existence of this case, defendant argues, indicates a valid contract with an enforceable arbitration provision. [Doc. No. 138 at p. 3].

The Court agrees with ARS that a valid agreement to arbitrate exists. The case of *Jallo v. Midland Funding, LLC* is instructive. 2014 WL 5810203 (S.D. Cal. Nov. 14, 2014). There, the District Court sided with the defendant that the declaration from its Director of Business Development, Mr. Minford, established the existence of a valid contract. *Id.* at *3. The declaration stated, *inter alia*: (1) [defendant] "had access to the [plaintiff's Sears]

Card Account" that was at issue in the case; (2) defendant "purchased a pool of loan accounts from Citibank" and among the loans was plaintiff's account; and, (3) defendant incorporated the business records generated by the original creditor into its business records on which it "regularly relie[s]" to conduct its own business. 3:14-cv-00325-BEN-NLS, Doc. No. 16-2, at pp. 1-3. The Court can see no material difference between the contents of Mr. Beck's Declaration and Mr. Minford's declaration in *Jallo*.[1] Mr. Beck, like Mr. Minford, "is qualified to attest that the Agreement received [by ARS] is the document that [Capital One Bank] sent to [ARS]." *Jallo* at *3. The Court finds Mr. Beck's position as Vice President of Operations is such that he would be familiar with plaintiffs' accounts and their respective use of those accounts to incur the debts that ARS sought to collect. Therefore a valid contract with an arbitration agreement exists.

## III. Whether ARS Can Enforce the Consumer Agreement Under Virginia Law

As the assignee of Capital One Bank, defendant asserts it is entitled to enforce the arbitration clause in the Customer Agreements signed by plaintiffs. [Doc. No. 130-1 at p 9]. Plaintiffs assert Virginia contract law – specifically provisions of the Virginia Uniform Commercial Code ("UCC") – precludes ARS from enforcing the arbitration agreement. [Doc. No. 135 at pp. 10-12]. Defendant's arguments are unavailing.

A third party may enforce an arbitration agreement under the FAA if the relevant state's contract law allows the third party to enforce the agreement. *Arthur Andersen LLP*

---

[1] One notable difference, however, is in the exhibits attached to the declaration in *Jallo*. Specifically, Exhibits A and B: the Affidavit of Sale of Account by Original Creditor and the Bill of Sale and Assignment, respectively. 3:14-cv-00325-BEN-NLS, Doc. No. 16-2. The exhibits showed that Midland Funding *purchased* the debt from the debt holder, and thus how Midland could enforce an arbitration agreement to which it was not an original party. Here, ARS has not appended such an exhibit to the declaration of Mr. Beck. Nonetheless, the information contained in such an exhibit does not bear on the question of whether the declaration suffices to establish a valid contract containing an arbitration agreement. How ARS came to be the assignee of Capital One Bank is, however, relevant to the question of its ability to enforce the arbitration agreement contained in the Customer Agreements. That open question is addressed in detail in Section III, *infra*.

*v. Carlisle*, 556 U.S. 624, 530-32 (2009).  Section 8.2-102 of the Virginia UCC "applies to transactions in goods" where "goods" are defined in Section 8.2-105 to mean "all things which are movable at the time of identification to the contract for sale." Va. Code. Ann. (West).  The legislative comments explain that "[t]he definition of goods is based on the concept of movability . . . [and] is not intended to deal with things which are not *fairly identifiable* as movables before the contract is performed." Va. Code Ann. § 8.2-105 (West) (emphasis added).  ARS asserts Section 8.2-102 governs its right to enforce the arbitration agreement because it states that "[a]n assignment of the contract . . . or an assignment in similar general terms is an assignment of rights." ARS's argument is erroneous. Section 8.2-102, as stated, applies to transactions in *goods*.  Credit card debt cannot be fairly identified as a "movable", and so a different section of the Virginia UCC governs this dispute.

Here, Title 8.9A, Secured Transactions is the applicable section of the Virginia UCC. Section 8.9A-109(a)(3) states in pertinent part, that "this title applies to [ . . . ]a sale of accounts."  Va. Code. Ann. (West). Section 8.9A-109(d)(5) clarifies that the title does *not* apply to "an assignment of accounts [ . . . ] which is for the purpose of collection only." *Id.* Thus only if defendant ARS *purchased* the credit card debt from Capital One Bank can it rightfully seek to enforce the arbitration agreements in plaintiffs' contracts.  If Capital One Bank merely assigned the accounts to ARS for collection purposes, then it has no authority to enforce the arbitration agreement. *See* § 8.9A-109(a)(3). The Court cannot conclude how ARS became the assignee of Capital One Bank on the evidence and documents provided to the Court at this time.  It is apparent from similar cases, such as *Jallo*, *supra*, that the relationship between a debt collector and the debt holder can be easily ascertained and presented to the Court.

Moreover, the Ninth Circuit recently reversed and remanded a District Court's decision to grant a motion to compel arbitration when presented with similarly paltry evidence from a defendant debt collector. *See Alarcon v. Vital Recovery Services, Inc.*, 706 Fed.Appx. 394 (9th Cir. 2017). Therein, defendants submitted a declaration in support of

their motion to compel arbitration in which it represented that "[defendant] became the assignee of certain assets [including those at issue in the case]." *Id.* at 395.  Despite the declarant stating he had reviewed the documents that detailed the assignment, the Court held that the declaration "contain[ed] no facts to support [that] conclusion" and that "[t]here is no evidence at all that [the debt holder] assigned its rights to [defendant] or any other intermediary assignee." *Id.*  A declaration merely offering a legal conclusion that a debt collector is an assignee "is inadmissible unless defendants produce the original records." *Id.*

The Beck Declaration is inadmissible to show defendant is the assignee of Capital One Bank, let alone whether it is the right class of assignee to enforce the arbitration agreement. As in *Alarcon*, the declaration states only that an assignment occurred without the accompanying documentation to support that contention.  Therefore ARS's Motion is denied.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

8

## CONCLUSION

IT IS HEREBY ORDERED defendant has until **April 6, 2018** to conduct limited discovery to obtain the cardholder agreements governing plaintiffs Michael Simmons and Jonathan Supler's accounts.

IT IS FURTHER ORDERED plaintiff has until **April 6, 2018** to conduct limited discovery regarding the formation or making of the agreement.

IT IS FURTHER ORDERED defendant's Motion to Compel Arbitration is **DENIED WITHOUT PREJUDICE**. Defendant may re-file its motion on or before **May 1, 2018**. There shall be no oral argument unless requested by the Court. Plaintiffs shall file any opposition to defendant's reinstated motion to compel arbitration within fourteen (14) days of defendant's motion, and defendant shall file any reply within seven (7) days of plaintiffs' opposition.

**IT IS SO ORDERED**.

Dated: February 5, 2018

Hon. Karen S. Crawford
United States Magistrate Judge

3:09-cv-00780-KSC